INZER, Justice:
Appellee, Betty Graham Moody, filed this suit in the Chancery Court of the First Judicial District of Hinds County seeking a divorce from appellant, Charles Brooks Moody, on the ground of habitual cruel and inhuman treatment. She also sought alimony and custody of and support for the child born to their marriage: a boy, Kenneth Paul Moody, born April 10, 1965, who was two years old at the time of the trial. Appellant answered and denied that he had been guilty of habitual cruel and inhuman treatment and by a cross bill sought a divorce from her on the ground of adultery. He also prayed for the custody of the child.
After a trial on the merits, the chancellor found that the proof on behalf of appellant was sufficient to establish appellee’s guilt of adultery and granted appellant a divorce on that ground. The chancellor found that both parents were unfit to have custody of the child and awarded custody to the maternal grandparents, Mr. and Mrs. J. W. Graham. Appellant was required to contribute $50 per month to the child’s support. The only part of the decree questioned on this appeal is the finding that appellant was unfit to have custody of the child and the award of custody to Mr. and Mrs. J. W. Graham, who were not parties to the litigation.
Since there is no appeal by Mrs. Moody from that part of the decree awarding appellant a divorce, it is not necessary to detail the facts relative to the divorce issue other than those which touch upon the fitness of appellant to have the custody of his child. The proof was ample to support the finding that the mother of the child was guilty of adultery and unfit to have his custody. The evidence establishes that the parties separated on December 26, 1966. At the time of the separation, appellee left the child in the custody of appellant. He made arrangements with his mother to look after the child during the day while he worked and he kept the child at night in the apartment he was renting. On February 8, 1967, appellant and appellee entered into a separation agreement whereby they settled their property rights and appellee agreed that appellant should have the custody of the child with visitation rights to her. After this agreement was signed, ap-pellee, without the consent of appellant, took possession of the child and carried him to the home of her father and mother, Mr. and Mrs. J. W. Graham, who had the child at the time of the trial. The chancellor approved the separation agreement except that part wherein it was agreed appellant was to have the custody of the child. Practically everyone who testified relative to the issue of custody agreed that appellant loved his child and was attentive to his welfare. All agreed that appellant worked hard at his occupation as a meat cutter. His take home pay is approximately $400 per month. There was no evidence that he was in any way morally unfit to have custody of the child. The only testimony that would tend to support the finding that appellant was unfit to have the custody was to the effect that he had a high temper and at times had much difficulty in controlling it. In fact, he admitted that he had a high temper and did have difficulty in controlling it. However, there was no-evidence that his high temper in any way affected his treatment of his child. There was evidence that he slapped his wife on several occasions while they were living together. He admitted he slapped her on one occasion as a result of her accusing him of cheating in a game of Scrabble.
*844 It is within the power of the chancellor in a divorce case, when it is shown that both parents are unfit to have the custody of the child, to award it to a third person who is not a party to the suit. Mahaffey v. Mahaffey, 176 Miss. 733, 170 So. 289 (1936). However, it is the strong policy of the law of this State that a child shall remain in the custody of one of the parents unless there has been a clear showing that both are unfit. The basis for this rule, as we have said many times, is that Fuman experience has demonstrated that as a general rule parental love and solicitude for the child’s welfare are the best guarantee that it will be properly cared for and trained for that station in life for which it will likely be best fitted. The presumption m all cases is that the child’s parents will love it most and care for it better than anyone else and it is in the best interest of the child to leave it in the custody of a ■parent. In order to overcome this presumption, there must be a clear showing that the parent is unfit by reason of immoral conduct, abandonment or other circumstances which clearly indicate that the best interest of the child will be served in the custody of another. In this case there is a complete absence of any showing of immoral conduct on the part of appellant. Neither is there any evidence of abandonment. Therefore, the question is whether ■there was a showing from other circumstances that the best interest of the child would be served in awarding his custody to his maternal grandparents. We do not think that there was such a showing. The fact that a person has a high temper is not sufficient cause or reason to say that he is unfit to have the custody of his own child, in the absence of any showing that the high temper has, or will, affect the child. The fact that someone else may be in a better position to furnish the child a larger and more convenient home in which to live does not necessarily mean it would be in the best interest of the child to take it from a parent who is otherwise fit to have the custody of the child.
The proof in this case shows without question that appellant loves his child and earns sufficient funds with which to support and educate him. It is true that he has to work and earn a living and this makes it necessary for someone else to care for the child while he is working. However, the proof shows that appellant’s mother is physically able and willing to assist her son in caring for the child while he is at work. In fact, the chancellor found that she was a fit person to have the custody of the child, but due to the crowded conditions in her home — she had three other children of school age — he selected the maternal grandparents to have custody of the child. Appellant expressed a willingness to provide additional room at his mother’s home where he could live there if the court was of the opinion that he should do so.
We think that parents should not only be encouraged but should be required to assume the responsibility of rearing their children. There are far too many parents who appear to be seeking ways to avoid this responsibility and there are far too many children being reared by persons other than their parents. While a child should not necessarily be awarded to a parent in a divorce case solely for the reason that such parent is the innocent party in the matrimonial dispute, it is generally held that when granting a divorce on the ground of adultery the child or children of the marriage should be granted to the innocent party.
After careful consideration of the record, we find that the chancellor was manifestly in error in finding the appellant unfit to have the custody of his child, and in finding that it was in the best interest of the child that his custody be awarded to his maternal grandparents. The decree of the chancery court will be affirmed in all respects except as to that part which awarded the custody of Kenneth Paul Moody to Mr. and Mrs. J. W. Graham and required appellant to pay them support for *845 the child. That part of the decree will be reversed and a decree will he entered here awarding the custody of the child, Kenneth Paul Moody, to appellant, with the right of appellee to have reasonable rights of visitation with the child, if she so desires.
Appellee’s motion for attorney fees is overruled.
Affirmed in part, reversed in part and decree here for appellant.
GILLESPIE, P. J., and JONES, BRADY and ROBERTSON, JJ., concur.