I.
Michael Carter and Evonne Taylor Carter were married June 4, 1983. One child was born April 11, 1985. The parents were divorced on the basis of irreconcilable differences on November 12, 1985, with custody of Michael J'Mele Carter going to his mother. The court ordered Michael Carter to pay $165.00 monthly child support and to pay one-half of J'Mele's medical expenses.
On October 11, 1990, Evonne Carter Horne[1] filed a petition to terminate Carter's parental rights. Horne complained that Carter had effectively abandoned the child and that her new husband, Don Horne, wished to adopt the child. Evonne Carter Horne died before the hearing on the petition. After Evonne's death her mother, Mattie Taylor, moved to be substituted as a party/plaintiff in the termination action. Carter denied abandonment of the child.
The chancellor found that Michael Carter was in contempt of court by failure to pay child support, and remanded him to custody of the Rankin County sheriff until he purged himself of the payment owed. The court specifically found that Carter "has not and did not abandon the minor child herein and further specifically finds that he is not an unsuitable parent and that the Petition for Termination of Parental Rights should be dismissed. . . ."
Mattie Taylor further petitioned the court for letters of guardianship of the minor child. Carter answered and filed a counter-complaint, in which he asserted he was the sole surviving parent of J'Mele and asked the Court to award custody to him. The court held "Michael Jerome Carter has not and did not desert or abandon the minor child herein and specifically finds that Michael Jerome Carter is not an unsuitable parent." Nonetheless, the court held Carter "unprepared at this time to have full custody of the minor child" and awarded a guardianship to the maternal grandmother, Mattie Taylor.
 II.
Under this Court's limited scope of review, findings of fact made by a chancellor will not be disturbed if this Court finds substantial evidence supporting those factual findings. Tedfordv. Dempsey, 437 So.2d 410, 417 (Miss. 1983) (citing Anderson v.Watkins, 208 So.2d 573, 575 (Miss. 1968), Culbreath v.Johnson, 427 So.2d 705, 707-708 (Miss. 1983)). As to issues of fact where no specific findings have been articulated by the chancellor, this Court proceeds upon the "assumption that the chancellor resolved all such fact issues in favor of appellee,"Tedford, 437 So.2d at 417; Harris v. Bailey Avenue Park,202 Miss. 776, 791, 32 So.2d 689, 694 (1947); Cotton v. McConnell,435 So.2d 683, 685 (Miss. 1983), or as a minimum, in a manner which would be in line with the decree. Tedford, 437 So.2d at 417. "[I]f there be substantial evidence undergirding such a `presumed *Page 876 
finding', we will not disturb it." Tedford, 437 So.2d at 417.
As always in cases concerning support of children, the best interest of the child is the "touchstone" which this Court must keep in mind. Tedford, 437 So.2d at 417 (citing Tammen v.Tammen, 289 Minn. 28, 182 N.W.2d 840, 841-842 (1970)). Under the standard of review utilized to review a chancery court's findings of fact, particularly in the areas of divorce and child support, this Court will not overturn the chancery court on appeal unless its findings were manifestly wrong. Nichols v. Tedder,547 So.2d 766, 781; Devereaux v. Devereaux, 493 So.2d 1310, 1312 (Miss. 1986); Carr v. Carr, 480 So.2d 1120, 1122 (Miss. 1985). If the chancery court's findings were manifestly wrong or the court applied an erroneous legal standard this Court will not hesitate to reverse. Bowers Window and Door Co., Inc. v.Dearman, 549 So.2d 1309 (Miss. 1989); Culbreath v. Johnson,427 So.2d 705, 707-08 (Miss. 1983); Johnson v. Hinds County,524 So.2d 947, 956 (Miss. 1988).
A child's father and mother are its natural guardians, but if those individuals are unfit to discharge the duties of guardianship, then the chancery court may appoint a suitable person. Miss. Code Ann. § 93-13-1 (1972). In fact, if it develops that the mother and father of a child are unsuitable to have custody, it is the duty and responsibility of the court to find a suitable home and suitable adults to stand in loco parentis.Morris v. Morris, 245 So.2d 22, 24 (Miss. 1971).
However, in deciding a custody dispute between a natural parent, such as Carter and a third party, such as Taylor, this Court has said:
 [I]t is presumed that the best interests of the child will be preserved by it remaining with its parents or parent. In order to overcome this presumption there must be a clear showing that the parent has (1) abandoned the child, or (2) the conduct of the parent is so immoral {as} to be detrimental to the child, or (3) the parent is unfit mentally or otherwise to have the custody of his or her child.
 Rodgers v. Rodgers, 274 So.2d 671, 672 (Miss. 1973) cited with approval in White v. Thompson, 569 So.2d 1181, 1184 (Miss. 1990).
"No one disputes that the natural parents of children have a predominant and primary interest in their nurture, care and custody." See, e.g., White v. Thompson, 569 So.2d 1181, 1183 (Miss. 1990); Simpson v. Rast, 258 So.2d 233, 236 (Miss. 1972);Ethredge v. Yawn, 605 So.2d 761 (1992) (not yet reported) (1992 WL 223931). This interest rises to the level of a legal presumption that custody be with the parent, though that presumption may be rebutted. The presumption is of long standing and is available to Michael Carter, as he is the child's natural parent.
Grandparents have no right to custody of a grandchild, as against a natural parent. This premise is reflected in this Court's frequent statements in custody contests between parents and grandparents that the parents prevail unless it is shown they have abandoned the child or are otherwise totally unfit. SeeMilam v. Milam, 509 So.2d 864, 866 (Miss. 1987); Rutland v.Pridgen, 493 So.2d 952, 954-55 (Miss. 1986); Owens, By andThrough, Mosley v. Huffman 481 So.2d 231, 242 (Miss. 1985);Stoker v. Huggins, 471 So.2d 1228, 1229 (Miss. 1985); Thomasv. Purvis, 384 So.2d 610, 612-13 (Miss. 1980); Pace v.Barrett, 205 So.2d 647, 649 (Miss. 1968). In cases where the Court places custody with the grandparent, "that judgment arises from sequential findings of legal forfeiture by the natural parent(s) and that the best interests of the child suggest such custody. No grandparent has a right to custody." Ethredge v.Yawn, 605 So.2d 761 (1992) (not yet reported).
In this case, the chancellor found that Carter was "unprepared." No statute or case provides precedent for denying custody to the natural parent based on unpreparedness. The law affords no legal basis for denying custody based on unpreparedness. Indeed, Carter attempted to prove that he was prepared to assume care for J'Mele, as he had thought about school and *Page 877 
the daily schedule of caring for the child. The chancellor found that Carter was "not unsuitable" to act as parent, but did not make a specific finding based on whether he was unfit or not. Absent a finding that Carter abandoned the child or is an unfit parent, he is entitled to custody. Failure to pay child support without more is insufficient predicate for a finding of abandonment. In Re Adoption of A Female Child, 412 So.2d 1175
(Miss. 1982).
 CONCLUSION
The chancellor erred in awarding custody to Mattie Taylor. There was no legal basis for doing so, thus this Court must reverse and remand to the trial court for a determination of whether Carter is a fit parent. The chancellor can again consider the "best interest of the child" and suitability of the father to have custody. The father is either fit or not fit and if he is a fit person, the custody of the child cannot be awarded to Mattie Taylor.
REVERSED AND REMANDED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, BANKS, McRAE and ROBERTS, JJ., concur.
[1] She had since remarried.