# IN THE SUPREME COURT OF MISSISSIPPI
## NO. 97-CA-00808-SCT

*GARY K. LOGAN*

*v.*

*SHIRLEY ANN LOGAN*

| | |
|---|---|
| DATE OF JUDGMENT: | 04/21/97 |
| TRIAL JUDGE: | HON. PAT H. WATTS, JR. |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | EARL L. DENHAM |
| ATTORNEY FOR APPELLEE: | BRENT M. BICKHAM |
| NATURE OF THE CASE: | CIVIL - DOMESTIC RELATIONS |
| DISPOSITION: | REVERSED AND REMANDED - 12/31/98 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 2/12/99 |

**BEFORE SULLIVAN, P.J., McRAE AND SMITH, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. In this appeal from the Jackson County Chancery Court, we find that the chancellor erred in determining that he did not have the power to make a custody award to a stepparent and thus making no custody decision whatsoever after expressly finding the natural parent unfit. Instead, where it is in the best interests of the child, temporary custody/guardianship should have been given to the stepfather, until such time as the biological father could be located and given proper notice. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

### I.

¶2. Gary Logan and Shirley Ann Logan were married on December 21, 1990. Upon their marriage, Gary assumed support of Terry, Shirley's son born during her previous marriage to Robert Cook. Terry, born February 14, 1990, is now eight years old. Cook, the child's biological father, is not a party to this proceeding, and according to the testimony of both Gary and Shirley, his whereabouts are unknown. It is alleged that Cook had not provided support for the child since April, 1990. Nevertheless, his parental rights have never been judicially terminated. The Logans are also parents of a son, Mark, who was born on July 15, 1992.

¶3. Gary and Shirley first separated on December 26, 1994. They finally parted ways on August 3, 1995. On October 10, 1995, Gary filed for divorce on the grounds of adultery, habitual cruel and unusual treatment, and irreconcilable differences. Shirley counterclaimed, also seeking a divorce on the grounds of habitual cruel and inhuman treatment and/or irreconcilable differences. A temporary order was entered in

October, 1995.

¶4. The chancellor granted Gary's petition for divorce on April 21, 1997. After applying the *Albright* factors to the children's situation, the chancellor awarded primary custody of Mark to Gary, finding "that the Wife has demonstrated moral unfitness as the mother of the child." The chancellor expressed concerns about Shirley's behavior, which, he found, demonstrated her unwillingness to care for the children. He particularly noted her frequent trips away from home without checking on them, her tendency to go to clubs and bars and to come home at late hours, and the fact that men other than Gary came to the apartment during the night while the children were there and Gary was not. He acknowledged that Gary provided a "secure and reliable family relationship," while Shirley's lifestyle "created a very unsettling influence."

¶5. The chancellor, however, decided not to determine custody of Terry. He specifically recognized the relationship between Gary and his stepson, noting that Gary had provided him with food, clothing, shelter and medical care since he was an infant, and "acted as a loving and caring parent to Terry." Indeed, the record indicates that Terry regards Gary as his father and calls him "Daddy." Further, Shirley testified also that neither she nor Terry had any contact with the child's biological father for more than five years. Nonetheless, the chancellor held that because the biological father was not made a party to the suit and was not before the court to testify in reference to Terry's care and custody, no finding could be made as to whether the presumption of the fitness of the natural parent could be overcome.

¶6. Gary filed a motion to reconsider, seeking custody of Terry. Shirley filed a counter-motion to reconsider, claiming, among other things, that the chancellor erred in separating Mark and Terry. The chancellor overruled both motions.

## II.

¶7. Gary first asserts that the chancellor erred in determining that he did not have the power to award custody of Terry to his stepfather. As he asserts, Miss. Code Ann. § 93-5-23 (1994) authorizes the chancellor to provide for the care and custody of stepchildren. Section 93-5-23 gives the court discretion to, "as may seem equitable and just, make all orders touching the care, custody and maintenance of the children of the marriage . . ." This Court has not addressed the issue of whether a chancellor may grant custody of a stepchild to a stepparent when one natural parent was not a party to the proceeding. However, we have recognized that while a chancellor may award custody to a third party when the parents are unfit, "(it is the strong policy of the law of this State that a child shall remain in the custody of one of the parents unless there has been a clear showing that both are unfit.)" *Sellers v. Sellers*, 638 So. 2d 481, 485 (Miss. 1994)(quoting Moody v. Moody, 211 So. 2d 842, 844 (Miss. 1968)).

> The basis for this rule, as we have said many times, is that human experience has demonstrated that as a general rule parental love and solicitude for the child's welfare are the best guarantee that it will be properly cared for and trained for that station in life for which it will likely be best fitted. The presumption in all cases is that the child's parents will love it most and care for it better than anyone else and it is in the best interest of the child to leave it in the custody of a parent. In order to overcome this presumption, there must be a clear showing that the parent is unfit by reason of immoral conduct, abandonment or other circumstances which clearly indicate that the best interest of the child will be served in the custody of another.

*Id.* at 485-86 (quoting *Moody v. Moody*, 211 So. 2d 842, 844 (Miss. 1968)). The natural parent is

entitled to custody, as against a third party, unless one of the following conditions is clearly proven: (1) the parent abandoned the children; (2) the parent's immoral conduct adversely affects the children's interests; or (3) the parent is unfit to have custody. ***Carter v. Taylor***, 611 So. 2d 874, 876 (Miss. 1992); ***Bubac v. Boston***, 600 So. 2d 951, 956 (Miss. 1992).

¶8. Additionally, we specifically have recognized the doctrine of *in loco parentis*. We have defined a person acting *in loco parentis* as one who has assumed the status and obligations of a parent without a formal adoption. ***Worley v. Jackson***, 595 So. 2d 853, 855 (Miss. 1992). Thus, in ***W.R. Fairchild Constr. Co. v. Owens***, 224 So. 2d 571, 575 (Miss. 1969), we stated that "[a]ny person who takes a child of another into his home and treats it as a member of his family, providing parental supervision, support and education, as if it were his own child is said to stand (in loco parentis.)" ***Id.*** "[I]f it develops that the mother and father of a child are unsuitable to have custody, it is the duty and responsibility of the court to find a suitable home and suitable adults to stand in loco parentis." ***Carter***, 611 So. 2d at 876 (citing ***Morris v. Morris***, 245 So. 2d 22, 24 (Miss. 1971)). *See also* Miss. Code Ann. § 93-13-1(1994)(stating that even though a child's father and mother are its natural guardians, if those individuals are unfit to discharge the duties of guardianship, then the chancery court may appoint a suitable person). Similarly, we have recognized the role of courts in general as *parens patriae* in child custody cases. ***Owens ex rel. Mosley v. Huffman***, 481 So. 2d 231, 238 (Miss. 1985).

¶9. Where a stepfather, as an incident to a new marriage, has agreed to support the children of the children of a previous marriage, or where he does so over a period of time and the mother and the children in good faith rely to their detriment on that support, the best interests of the children require entry of a child support decree against the stepfather. ***Tedford v. Dempsey***, 437 So. 2d 410, 421 n.10 (Miss. 1983). Thus, it follows that if a stepparent can be required to pay child support for a stepchild based on his support of the stepchild over a period of time, where it is in the best interests of the child, he should be allowed to have custody of the stepchild based on the affection for and support of that child over a period of time. With the burden should go the benefit.

¶10. Even without clear statutory authorization for the inclusion of stepchildren as "children of the marriage" under § 93-5-23, it is clear from the decisions of this Court that a stepparent should be considered among the third parties entitled to custody of a child by overcoming the presumption of the fitness of the natural parents. This comports with our well-established concern for the best interests of the child in custody matters. ***Carrow v. Carrow***, 642 So. 901, 904 (Miss. 1994); ***Chamblee v. Chamblee***, 637 So. 2d 850, 863 (Miss. 1994); ***Sellers***, 631 So. 2d at 483; ***Moak v. Moak***, 631 So. 2d 196, 200 (Miss. 1994).

¶11. "In child custody cases, the chancellor's duty is to determine what is in the best interest of the child. As such, chancellors should consider any and all evidence which aids them in reaching the ultimate custody decision."***Murphy v. Murphy***, 631 So. 2d 812, 816 (Miss. 1994). Article 6, section 159 of the Mississippi Constitution provides the chancery court with full jurisdiction over minor's business. Given the chancellor's supreme role in custody matters, he, indeed, did have jurisdiction over the determination of the final custody of Terry Cook. Thus, the chancellor erred in finding to the contrary.

III.

¶12. Gary next alleges that the chancellor clearly erred in refusing to award him custody of his stepson after explicitly finding that Shirley was unfit. Gary contends that the chancellor's finding that Shirley demonstrated "moral unfitness" under his application of the ***Albright*** factors was sufficient grounds for him to grant

custody of Terry to him. It is well settled that a chancellor may grant custody of a stepchild to a stepparent when the chancellor finds the natural parents to be unfit. *Sellers*, 638 So. 2d at 485 (recognizing that a third party must show that natural parents are unfit to deprive the natural parents of custody of their children). However, the chancellor determined that he could not fairly grant custody of Terry to Gary, despite his inclination to do so, because Terry's biological father, Robert Cook, was not present to challenge the allegations made against him and was not a party to the divorce proceeding.

¶13. Rather than doing nothing after having found the mother unfit, the chancellor had several avenues open to him. As a first step, he should have ordered the Department of Human Services to locate Cook, so that he might be provided with proper notice and inquiry made into his fitness as a parent. Further, until such time as Cook could be located and proceedings initiated to determine his fitness and/or whether he had abandoned the child, Gary could have been awarded temporary custody and/or appointed guardian.

¶14. Once Cook was properly noticed, then proceedings to determine permanent custody could begin. To be awarded custody, Gary must again make a clear showing that the natural parent has abandoned the child; the conduct of the parent is so immoral as to be detrimental to the child; *or* that the parent is unfit mentally or otherwise to have custody. *Sellers,* 638 So. 2d at 481. Once such a showing is made, the chancellor must consider, as with other custody determinations:

> The age of the child is . . . but one factor to be considered. Age should carry no greater weight than other factors to be considered, such as: health, and sex of the child; a determination of the parent that has had the continuity of care prior to the separation; which has the best parenting skills and which has the willingness and capacity to provide primary child care; the employment of the parent and responsibilities of that employment; physical and mental health and age of the parents; emotional ties of parent and child; moral fitness of parents; the home, school and community record of the child; the preference of the child at the age sufficient to express a preference by law; stability of home environment and employment of each parent, and other factors relevant to the parent-child relationship.

*Id.* at 485 (quoting *Albright v. Albright*, 437 So. 2d 1003, 1005 (Miss. 1983)).

IV.

¶15. Contrary to his findings, the chancellor had the authority to determine the custody of Terry Cook. At the very least, the child could have been placed in the temporary custody of his stepfather, Gary Logan, until such time as his natural father could be located and a determination of his parental fitness made. Moreover, where it is in the best interests of the child and a determination has been made that the child's biological parents are unfit, a step parent may be found to be the proper person to assume custody of that child. Accordingly, we reverse and remand for further proceedings consistent with this opinion.

¶16. **REVERSED AND REMANDED**.

**PRATHER, C.J., SULLIVAN AND PITTMAN, P.JJ., BANKS, ROBERTS, SMITH, MILLS AND WALLER, JJ., CONCUR.**