# IN THE COURT OF APPEALS
## OF THE
## STATE OF MISSISSIPPI
### NO. 98-CA-00261-COA

**ROBIN HUMPHREY MARTIN GRANT**          **APPELLANT**

**v.**

**SCOTT ALAN MARTIN, LARRY MARTIN AND PEGGY MARTIN**      **APPELLEES**

| | |
|---|---|
| DATE OF JUDGMENT: | 01/13/1998 |
| TRIAL JUDGE: | HON. PAT WISE |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | DANNYE L. HUNTER |
| ATTORNEY FOR APPELLEES: | VAUGHN DAVIS JR. |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| TRIAL COURT DISPOSITION: | DISMISSED MOTION FOR MODIFICATION |
| DISPOSITION: | REVERSED AND RENDERED IN PART, REMANDED IN PART - 05/04/99 |
| MOTION FOR REHEARING FILED: | 5/17/99 |
| CERTIORARI FILED: August 10, 1999 | |
| MANDATE ISSUED: | |

BEFORE KING AND SOUTHWICK, P.JJ., AND DIAZ, J.[1]

SOUTHWICK, P.J., FOR THE COURT:

¶1. In a 1995 divorce, the natural parents voluntarily relinquished custody of their three minor children. The paternal grandparents were granted custody, an arrangement actually begun in 1993 when the grandparents were granted letters of guardianship. In 1998 the Chancery Court of Hinds County refused to grant the natural mother's motion for a return of custody, finding that no proof of a material change in circumstances adverse to the interest of the children had been proven. We agree with the mother that this was an improper burden to place upon her. Instead, we hold that she should have been awarded custody and consequently we reverse and render. The issue of whether the father should pay child support remains open, and we remand for further proceedings.

**FACTS**

¶2. Robin Humphrey and Scott Martin were married in 1989. The couple had three children together, Jessica, Jordan, and Logan. The couple separated in 1993 and were granted a divorce in 1995 on the basis of irreconcilable differences. Both parents had agreed in 1993 to permit letters of guardianship over the children's estates to be given to Scott Martin's parents, Larry and Peggy Martin. The children's mother testified that this was done so that the children could be put on the grandparents' insurance policy. When the 1995 property settlement agreement for the divorce was finalized, it awarded custody of the children to the grandparents.

¶3. Robin Martin married Prentiss Grant in 1996 and the next year sought to regain custody of her children, have the guardianship of Larry and Peggy Martin dissolved, and have the father, Scott Alan Martin, pay child support. The chancellor granted summary judgement for the defendants, Scott, Larry, and Peggy Martin.

¶4. At the time that Robin Grant gave custody of her children to the paternal grandparents, she was in considerable financial difficulty. There is a dispute as to whether she could provide medical insurance for the children and also disagreement over what support, if any, she had provided for the children since they had been living with the grandparents.

**DISCUSSION**

*ISSUE 1: Custody of minor children*

¶5. The question here is simple yet understandably emotional for the parties: once custody has been validly awarded to grandparents due to the voluntary relinquishment by the parents, what is required a few years later for one of those natural parents to regain custody? In particular that question arises here when no finding that either parent was unfit has ever been made by any court. The chancellor required that the mother who wants custody after it has previously been awarded to grandparents must prove a material change of circumstances adverse to the interest of the children.

¶6. We first note what this case is not. This is not the initial custody decision, in which a natural parent is contending with a claim of grandparents for custody. The supreme court has established the principles for that choice quite conclusively:

> Grandparents have no right to custody of a grandchild, as against a natural parent. This premise is reflected in this Court's frequent statements in custody contests between parents and grandparents that the parents prevail unless it is shown they have abandoned the child or are otherwise totally unfit.

*Carter v. Taylor,* 611 So.2d 874, 876 (Miss. 1992). The statement about abandonment or unfitness is premised, first, on the presumption that it is in the best interest of children to be in the custody of a natural parent. *Hale v. Hood*, 313 So. 2d 18, 19-20 (Miss. 1975). Overcoming the presumption requires proof that "(1) the parent has abandoned the child, (2) the conduct of the parent is so immoral as to be detrimental to the child, or (3) the parent is mentally or otherwise unfit to have custody of the child." *Id.*

¶7. *Hale* is instructive because it was a case of custody modification, not an initial determination; yet, the supreme court applied the presumption for a natural parent. *Hale* involved a father seeking custody after originally allowing custody to go to the mother. No custody orders approving the following changes were

entered: the mother let the child stay with the father's mother, who later became ill and turned the child over to her daughter (the sister of the child's father). *Id.* at 19. The father then sought formal legal custody, which the chancellor denied. On appeal, the court found that the presumption that the father should have custody as against the aunt could only be overcome by the three factors of abandonment, immoral conduct, or general unfitness. *Id.* at 20. The distinction is that in *Hale* the sister had never been awarded custody, while in the present case the grandparents had been. The facts supporting the holding, though, were that when one parent has been awarded custody but is no longer seeking to retain it, custody is presumptively proper in the other parent unless unfitness or abandonment is shown.

¶8. Another case vigorously disputed by the parties is *Thomas v. Purvis*, 384 So. 2d 610 (Miss. 1980). Prior to a divorce, the couple's children had been placed with a county welfare office because of the chancellor's finding that both parents were unfit; this finding was referenced in the divorce decree and custody was awarded to paternal grandparents. *Id.* at 611. This was the equivalent of an actual finding in the divorce that the natural parents were unfit, a situation that does not exist in the present case. The mother remarried two days after the divorce. *Id.* at 611. She subsequently petitioned to regain custody, but the chancellor declined stating the mother had failed to prove a material change in circumstances adverse to the best interest of the child. *Id.* at 612.

¶9. The supreme court reversed and said that the chancellor erred in requiring the mother to put on such proof. *Id.* at 612-13. The requirement that one seeking a change in custody must demonstrate that the custodial party has undergone a material change in circumstances *detrimental to a child* applies when one parent is seeking to overturn a previous award of custody to the other. It has no application when a parent is seeking to regain custody from someone besides the other parent. *Id.* The court remanded for a determination of whether the mother was now a fit person to have custody; if so, "the court *will* grant custody to her . . . ." *Id.* at 613 (emphasis added)

¶10. Therefore the standard that there must be a material change of circumstances that adversely affects the best interest of the child cannot be applied in the present case, but that is exactly what the chancellor did find was the reason not to change custody:

> That in order to modify custody, there must be a material change in circumstances surrounding the minor child and in the best interest of the minor child that custody be changed, and that the change must affect the child's welfare adversely.
>
> . . .
>
> [T]he issue is not whether Mrs. Grant is unfit or immoral; it is whether or not there has been a substantial material change in circumstances.
>
> I look with great interest for anything that has changed other than her getting remarried since the previous Judgement of Divorce. In looking at the time between the time of the divorce, she has lived from six to seven different places. There has not been anything that I heard that put the children in any type of detriment; there just hasn't been anything in this Court's opinion that has harmed the children.
>
> . . .
>
> [T]his court finds again that there has not been in the Court's opinion a substantial material change in circumstances surrounding the minor children, and that it would be in the children's best interest that

custody remain with the Martins.

¶11. As a result, we hold that the chancellor applied the incorrect legal standard. According to *Thomas*, even when a natural parent has previously been found unfit and custody awarded to grandparents, a chancellor *must* later modify custody if the natural parent desires custody and demonstrates fitness. There is no requirement that proof be offered that retaining custody in the grandparents is adverse to the child's interest; it is only necessary that the petitioning parent show that she has not abandoned the children, has not engaged in immoral conduct, and is not otherwise unfit.

¶12. The grandparents here seek support from a different principle. "In those cases where the Court places custody with the grandparent, that judgment arises from sequential findings of legal forfeiture by the natural parent(s) and that the best interests of the child suggest such custody." *Ethridge v. Yawn*, 605 So. 2d 761, 764 (Miss. 1992). The Martins contend that this statement implies that custody vested by a divorce decree should not be altered absent a change in either the parties circumstances or the child's. Yes and no. If one of the "sequential findings" was the unfitness of a natural parent, then among the changes in circumstances must be that the parent at the time that he or she is seeking custody has become fit. That is not a change adverse to the interest of the child but is a change beneficial to the interest of the parent. Here, there never was any proof of unfitness.

¶13. We hold that Mrs. Grant, never having been found to be unfit, was entitled to the presumption that she should have custody as against the grandparents. The grandparents would have needed to come forward with evidence that she had abandoned the children, had engaged in the kind of immoral conduct that disqualifies her from custody, or was otherwise unfit. That was not offered.

¶14. Since Mrs. Grant had never been found unfit, it was not precisely required that she put on evidence of a material change in *her* circumstances. Nonetheless, such evidence was introduced sufficient to rebut any suggestion in the grandparents' case that she was not fit.

¶15. We do not ignore that the chancellor must always rule based on the best interest of the child. However, as the cited precedents reveal, it is presumed that the best interest of children is to be in the custody of a natural parent. The presumption is not overcome by anything other than the factors we have already discussed. In other words, it is not for the chancellor to hold that despite the fact that a parent is fit, has not engaged in immoral conduct, and has not abandoned the children, it is *still* in the children's best interest to remain with grandparents. For example, a chancellor might leave custody in a third party because of the passage of a substantial period of time (but without a resulting abandonment) and a strong bond having been established between the minors and that third party. Without the definitive rules established by such cases as *Thomas,* such a finding might otherwise be subject to manifest error review by an appellate court. Instead, the presumptions of the law more narrowly limit a chancellor in the difficult, even impossible task of choosing between two sets of loving, nurturing relatives, both of which could provide a strong home life for the children.

¶16. When a choice has to be made, the choice must be for a fit parent who has not abandoned her children, over any other person.

### Issue 2: The guardianship.

¶17. The chancellor also continued the guardianship of the grandparents over the estates of the three

children. The control of the estates through a guardianship is related but not identical to the issues of custody. Though there may be situations in which a third party may be justified in continuing a guardianship over the estate of a minor even though custody is returned to a natural parent, nothing was presented in this case to suggest that Mrs. Grant was not a fit person to have custody of the person and guardianship of the estates of the minor children. It would appear that the guardianship by the grandparents continued for the same reason as the custody was continued.

¶18. Our decision regarding returning custody to Mrs. Grant, without separate and sufficient evidence regarding reasons to continue the guardianship, also requires a reversal as to the continuation of the guardianship. *See Brown v. Robinson*, 402 So. 2d 354, 355 (Miss.1981).

¶19. We apply the law as it has quite reasonably been developed in this area, in full recognition that a choice is thereby made that may never appear justifiable to the Martins. By the rule of law that we are applying, however, a fundamental right is preserved, namely, that of a parent to raise his or her children. That right is in constant danger and difficulty of application with the problems that arise from divorce, but we see no reason that it should be altered or abandoned.

¶20. Because of the chancellor's rulings regarding custody, the issue of the father's child support was not addressed. That is raised as an error on appeal. We remand for further proceedings.

**¶21. THE JUDGMENT OF THE HINDS COUNTY CHANCERY COURT IS REVERSED AND JUDGMENT IS ENTERED FOR THE APPELLANT AS TO CUSTODY AND THE GUARDIANSHIP. THE CAUSE IS REMANDED FOR FURTHER PROCEEDINGS REGARDING CHILD SUPPORT. COSTS OF THE APPEAL ARE ASSESSED TO THE APPELLEES.**

**KING, P.J., BRIDGES, COLEMAN, DIAZ, IRVING, LEE, AND THOMAS, JJ., CONCUR.**

**McMILLIN, C.J. AND PAYNE, J., NOT PARTICIPATING.**

1. After the November 17, 1998 oral argument, Chief Judge McMillin recused himself. Judge Diaz was substituted on the panel and listened to the tape of the oral argument.