859 So.2d 1001 (2003)
In re The CUSTODY OF M.A.G.
No. 2001-CA-01701-SCT.
Supreme Court of Mississippi.
September 18, 2003.
*1002 Christi R. McCoy, Booneville, for appellant.
Will R. Ford, for appellee.
EN BANC.
SMITH, Presiding Justice, for the Court.
¶ 1. A natural father, A.G., appeals from a decision of the Chancery Court of Lee County finding him to be an unfit parent and awarding custody of his six-year-old son, M.A.G., to M.M. and F.M. (custodial parents), relatives of M.A.G.'s deceased mother. The Chancellor also ordered child support to be paid by A.G. and allowed him reasonable visitation. Finding no reversible error, we affirm the Chancellor's judgment.

FACTS
¶ 2. M.A.G. is the biological child of A.G. and P.R. He lived with his natural parents *1003 from his birth until P.R.'s death on August 18, 1998. A.G. was arrested for the murder of P.R. and their five month-old child, B.G., and he was incarcerated from August, 1998 to February, 1999. All criminal charges against him were dropped. During A.G.'s incarceration, M.A.G. eventually came to live with the custodial parents. The custodial parents sought permanent custody of M.A.G., alleging A.G. is an unfit parent. After his release from incarceration, A.G. attempted to regain custody of his son. A.G. was granted temporary supervised visitation with M.A.G. by the Chancellor on September 28, 1999.
¶ 3. The trial focused on A.G.'s behavior prior to his incarceration. Witnesses testified that A.G. abused drugs and alcohol, abused P.R., and provided little moral leadership to his family. There was testimony that his continued drinking after being released from jail led to a conviction for public drunkenness in December, 1999. There was some evidence he exposed M.A.G. to alcohol, in violation of the September 28 order. There was also testimony that he exposed M.A.G. to sexual activity during visitation, i.e., he bathed with his girlfriend while his son was in the house, and M.A.G. witnessed A.G.'s nephew having sex with his girlfriend. The Chancellor found A.G. to be an unfit parent, awarded custody to the custodial parents, and granted A.G. reasonable visitation. Aggrieved, A.G. appeals and raises the following issues:
I. WHETHER THE CHANCELLOR ERRED AS A MATTER OF LAW BY USING THE ALBRIGHT FACTORS TO DETERMINE CUSTODY IN A DISPUTE BETWEEN A NATURAL PARENT AND A THIRD PARTY.
II. WHETHER THE CHANCELLOR ABUSED HER DISCRETION IN APPLYING THE ALBRIGHT FACTORS TO THE FACTS IN THIS CASE.

STANDARD OF REVIEW
¶ 4. There is a de novo standard of review for questions of law. Mason v. State, 781 So.2d 99, 100 (Miss.2000) (citing Miss. Transp. Comm'n v. Fires, 693 So.2d 917, 920 (Miss.1997)). Where a chancellor has applied the correct legal standard and makes a finding of facts which is supported by substantial evidence, this Court will not reverse her decision. Touchstone v. Touchstone, 682 So.2d 374, 377 (Miss. 1996).

DISCUSSION
I. WHETHER THE CHANCELLOR ERRED AS A MATTER OF LAW BY USING THE ALBRIGHT FACTORS TO DETERMINE CUSTODY IN A DISPUTE BETWEEN A NATURAL PARENT AND A THIRD PARTY.
¶ 5. A.G. alleges the Chancellor erred by using the Albright factors, Albright v. Albright, 437 So.2d 1003, 1005 (Miss.1983), to determine custody in a dispute between a natural parent and a third party. It is true that there is a presumption that a natural parent is the proper custodian for their child. Logan v. Logan, 730 So.2d 1124, 1125 (Miss. 1998). However, it has been stated many times that this presumption can be overcome by a clear showing that the parent is unfit. Id. (citing Sellers v. Sellers, 638 So.2d 481, 485 (Miss.1994)). See also McKee v. Flynt, 630 So.2d 44, 46 (Miss.1993); Carter v. Taylor, 611 So.2d 874, 876 (Miss.1992); Bubac v. Boston, 600 So.2d 951, 956 (Miss. 1992); Moody v. Moody, 211 So.2d 842, 844 (Miss.1968). In fact, Miss.Code Ann. § 93-13-1 (1994) states in pertinent part: "[I]f any father or mother be unsuitable to discharge the duties of guardianship, then *1004 the court, or chancellor in vacation, may appoint a suitable person...."
¶ 6. As far back as 1929, this Court has held that when one parent dies, the other parent has a right to the child's custody until there has been abandonment or the living parent has forfeited that right by immoral conduct. Stegall v. Stegall, 151 Miss. 875, 119 So. 802, 803 (1929). More recently, this Court has ruled unfitness may be shown by (1) abandoning the child; (2) behaving so immorally as to be detrimental to the child; or (3) being unfit mentally or otherwise to have custody of the child. Carter, 611 So.2d at 876 (citing Rodgers v. Rodgers, 274 So.2d 671, 672 (Miss.1973)). See also Bubac, 600 So.2d at 956; Rutland v. Pridgen, 493 So.2d 952, 954 (Miss.1986). Despite A.G.'s contention otherwise, the Chancellor clearly found him to be an unfit parent. Only after this determination had been made, did the Chancellor follow the Albright factors to decide M.A.G.'s best interest. While this Court has not established the Albright factors as a test for the fitness of a parent, the mere mention of these factors in showing A.G. an unfit parent does not constitute error. Indeed, the Chancellor specifically stated that A.G. was unfit, and her reasons for this conclusion were carefully laid out. Clearly, however, a finding of unfitness is necessary to award custody to a third party against a natural parent and must be done before any analysis using the Albright factors to determine the best interests of the child.
¶ 7. Here, the Chancellor applied the proper legal standard for deciding custody between a natural parent and a third party, i.e., a finding of unfitness is required before a third party can be awarded custody. Thus, our correct standard of review is abuse of discretion. Touchstone, 682 So.2d at 377. Since this decree deprives a natural parent of the custody of his child, we have reviewed the record with care. There was substantial evidence of drug and alcohol abuseat times in the presence of M.A.G. There were errors of judgment by A.G. such as renting a horror movie to watch with his son when the six-year-old M.A.G. thought A.G. had killed his mother and brother with a baseball bat. There was evidence of drunken driving by A.G. with M.A.G. in the car. A.G. exposed M.A.G. to sexual situations. A.G. threatened and abused P.R. A.G. was involved in sexual relationships with married womenonce in the presence of her husbandand was promiscuous. A.G. never reported his live-in girlfriend and their five-month-old son missing after they were killed. We conclude that the Chancellor did not abuse her discretion in finding A.G. to be an unfit parent.
II. WHETHER THE CHANCELLOR ABUSED HER DISCRETION IN APPLYING THE ALBRIGHT FACTORS TO THE FACTS IN THIS CASE.
¶ 8. In child custody matters, review by this Court is "quite limited in that the Chancellor must be manifestly wrong, clearly erroneous, or apply an erroneous legal standard in order for this Court to reverse." M.C.M.J. v. C.E.J., 715 So.2d 774, 776 (Miss.1998) (quoting Wright v. Stanley, 700 So.2d 274, 280 (Miss.1997)). Where a Chancellor has applied the correct legal standard and made findings of fact which are supported by substantial evidence, this Court will not reverse her decision. Touchstone, 682 So.2d at 377. The Chancellor determined A.G. was an unfit parent. The Chancellor then intelligently and thoroughly evaluated what was in M.A.G.'s best interests according to the Albright factors. This Court will not disturb a chancellor's ruling when it is supported by substantial evidence. Id.; Smith v. Jones, 654 So.2d 480, 485 (Miss. 1995); *1005 Cooper v. Crabb, 587 So.2d 236, 239 (Miss. 1991). The events and traits discussed above were some of the factors the Chancellor examined when she determined it was in M.A.G.'s best interest to remain in the custody of the custodial parents. She also pointed to superior parenting skills, freedom from employment responsibilities for F.M., the moral fitness of the custodial parents, and the stability of home environment in awarding custody to the custodial parents. The Chancellor's decision was supported by the evidence, and it was not an abuse of discretion.

CONCLUSION
¶ 9. We find no reversible error in the Chancellor's finding A.G. unfit and explaining her reasons for doing so in a subsequent Albright analysis. We find no reversible error in the Chancellor's decision in awarding custody to the custodial parents and setting child support payable by A.G. and in allowing reasonable visitation with A.G. Therefore, we affirm the Chancellor's judgment.
¶ 10. AFFIRMED.
PITTMAN, C.J., WALLER, COBB, CARLSON AND GRAVES, JJ., CONCUR. McRAE, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY EASLEY, J. DIAZ, J., NOT PARTICIPATING.
McRAE, Presiding Justice, Dissenting.
¶ 11. The majority of this Court and the trial court fail to give adequate consideration to the long-standing presumption and public policy of this state that custody of a child is best given to the natural parent absent a clear showing that the natural parent is unfit. Since the evidence presented does not clearly show the natural father, A.G., is an unfit parent, the order of the Chancery Court should be reversed and the case remanded. The parties can always review the situation at a later date. For this reason, I dissent.
¶ 12. As stated by the majority, there is a presumption that a natural parent is the proper custodian for his/her child. Logan v. Logan, 730 So.2d 1124, 1125 (Miss.1998). The reasoning behind such a presumption has been articulated as follows:
[H]uman experience has demonstrated that as a general rule parental love and solicitude for the child's welfare are the best guarantee that it will be properly cared for and trained for that station in life for which it will likely be best fitted. The presumption in all cases is that the child's parents will love it most and care for it better than anyone else and it is in the best interest of the child to leave it in the custody of a parent.
Id. at 1126 (citations omitted). To this end, "[i]n order to overcome this presumption, there must be a clear showing that the parent is unfit by reason of immoral conduct, abandonment, or other circumstances which clearly indicate that the best interest of the child will be served in the custody of another." Id. (emphasis added & citations omitted).
¶ 13. Looking at the evidence presented, there has been no clear showing that A.G. is an unfit father or that it would not be in the best interest of his child to be restored to his custody. The only evidence allegedly relied upon by the majority and the Chancellor in support of denying A.G. custody can be summarized as follows:
1. A.G.'s seven-month stay in jail before the dismissal of criminal charges against him;
2. Alleged alcohol abuse of A.G.;
3. A.G.'s conviction for public drunkenness;
4. A.G. allegedly giving alcohol to his minor child;
*1006 5. A.G.'s alleged sexual activity in his home while his minor child was visiting; and
6. The minor child's allegedly having seen his cousin and cousin's girlfriend having sex in A.G.'s house.
These instances, even combined, can hardly constitute a clear showing as most were unsubstantiated allegations. The only two which could be proven were A.G.'s seven-month stay in jail pending the dismissal of criminal charges and his conviction for public drunkenness. The seven-month incarceration can hardly be held against A.G. as the charges against him were dismissed.
¶ 14. The evidence presented does not add up to a clear showing that A.G. is an unfit father. For this reason, I dissent.
EASLEY, J., JOINS THIS OPINION.