559 So.2d 1031 (1990)
Mrs. Kenneth MUSE
v.
Michael Lee HUTCHINS & Mrs. G.L. Hutchins.
No. 89-CA-248.
Supreme Court of Mississippi.
April 4, 1990.
Jacque Bergman, L.C. James, James & Associates, Jackson, for appellant.
Merrida P. Coxwell, Jr., Percy S. Stanfield, Stanfield Carmody & Coxwell, Jackson, for appellee.
Before HAWKINS, P.J., and SULLIVAN and ANDERSON, JJ.
SULLIVAN, Justice, for the court:
In September of 1987, Laura Muse Hutchins filed a Complaint for Divorce against her husband, Michael Lee Hutchins. Thereafter she disappeared on December 15, 1987, and her body was discovered on January 26, 1988. She had been murdered.
After Laura's disappearance Hutchins moved with the children into the residence of his mother, Mrs. G.L. Hutchins. On February 1, 1988, Mrs. G.L. Hutchins adopted the two children. On February 25, 1988, some three weeks later, Mrs. Kenneth Muse, Laura's mother and maternal grandmother of the children, filed a complaint for visitation rights, and on March 23, 1988, Mrs. Muse filed a motion to join Mrs. Hutchins as a party defendant. The suit was amended to request visitation rights or custody.
*1032 There was pending in the suit filed by Mrs. Muse a motion filed by Mrs. Hutchins to dismiss the bill of complaint for visitation rights. A hearing was held for temporary visitation rights on March 24, 1988, at which time Mrs. Hutchins testified that she had legally adopted her grandchildren on February 1, 1988. At the time of this hearing, her son resided in her home with her and the children. The record reflects that initially Mrs. Muse was allowed to visit the children at her option but for the two months prior to the hearing visitation had been restricted to every other Thursday from 3:00 to 5:00 P.M. The record reveals that Mrs. Muse had a warm and loving relationship with the two children. The visitation rights of Mrs. Muse, however, were curtailed, in part, because Mrs. Muse accused the children's father of murdering their mother.
Mrs. Muse testified that prior to her daughter's disappearance, the children were at her home every day of the week and were able to spend the night and stay over on weekends. During that period Mike Hutchins never demonstrated any opposition to the role which Mrs. Muse played in the lives of her grandchildren. However, after Laura disappeared, Mrs. Muse testified that Hutchins never brought the children back. Mrs. Muse is of the opinion that no member of her family had ever mentioned to the children that their father may have murdered their mother. On one occasion when her granddaughter asked her where her momma was, Mrs. Muse replied, "Ask your daddy." But Mrs. Muse explained that she responded in this manner because she did not know what to say to the child as this question had shocked her.
On April 1, 1988, Chancellor Paul Alexander rendered an opinion which stated in part:
The Court is of the opinion that it is not authorized to grant temporary visitation rights but is of the opinion that it has the right to grant permanent visitation rights upon a hearing if it finds that permanent visitation rights are appropriate in all of the circumstances. It is not necessary at this time for the Court to go into all of the details of this case. It is sufficient to say that when all of the pleadings are in order and the discovery, if any, is complete, this matter should then be set down for a hearing on the amount of visitation that should be granted to the Plaintiffs, if any.
In November of 1988, Chancellor Alexander held a hearing on the pending Motion to Dismiss. The testimony was essentially the same as that at the previous hearing. From the bench, Chancellor Alexander ruled:
In connection with this matter the Court would not be at all disappointed if either side appealed in connection with this. In any event, in this particular situation the adoption has been granted. At that time it was not necessary and as I understand it still is not necessary that grandparents be made a party to an adoption proceedings [sic]. The Court was of the opinion at the time that the adoption would be in the best interest of the children. At the time of the adoption Mrs. G.L. Hutchins assumed responsibility of the children. The Court is of the opinion that Mrs. Linda Hutchins is the recognized adopting parent of these children and that she alone has the right to the children. I sincerely hope that Mrs. Hutchins will allow Mrs. Muse to visit with the children and allow the children to visit with her. I really believe that under the law as it now stands Mrs. Hutchins is the only one that has any legal right to the children.
The chancellor went on to say, "... I'm going to enter an order dismissing these proceedings as a matter of law and I think that is all I can do." Unfortunately, Chancellor Alexander died November 30, 1988, before a final order could be submitted.
On December 21, 1988, a Motion to Correct Final Judgment and/or Court's Opinion Denying Visitation Rights or Custody Through Inadvertence, Accident or Mistake, Reason Justifying Relief or, in the Alternative, for a New Trial was filed by Mrs. Muse. This motion was heard on January 17, 1989, before Acting Chancellor *1033 R.P. Sugg, serving as an emergency appointee to the position left vacant by the death of Chancellor Alexander. In his written opinion, Chancellor Sugg said:
Plaintiff urges the Court to modify the finding of Judge Alexander based upon an amendment to Section 93-16-7 as originally enacted by the Legislature in 1983 so that the chapter authorizing visitation rights of natural grandparents shall not apply to any child who has been adopted, "by order or decree of any court unless one of the legal parents of such child is also a natural parent of such child." (Emphasis supplied).
The adopting parent is not the natural parent of the child, but is the paternal grandmother; therefore, the chapter does not apply in this case. Until Olson v. Flynn [sic] is overturned or modified by the Court, or the statute amended, Olson must be followed. Accordingly, the motion to modify is overruled for two reasons. It was not filed within ten days required by 52(b) and it has no merit.
A Final Judgment dismissing the Complaint for Visitation, denying the Motion to Correct Final Judgment and fully incorporating the bench opinion was entered January 27, 1989.

I.

DID THE LOWER COURT ERR IN ITS APPLICATION OF LAW?
The thrust of this argument by Mrs. Muse is that it was error to apply the case of Olson v. Flinn, 484 So.2d 1015 (Miss. 1986), rather than the Grandparents Visitation Rights Act, amended on March 4, 1986.
Olson v. Flinn, 484 So.2d at 1018, held that "an adoption by a step-parent after the death of one of the child's natural parents terminates the visitation rights of those natural grandparents, except as to the natural parent who is the spouse of the adopting parent."
§ 93-16-1, Miss. Code Ann. (Supp. 1989), states:
(1) Any court of this state which is competent to decide child custody matters shall have jurisdiction to grant visitation rights with a minor child or children to the grandparents of such minor child or children as provided in this chapter.
After the Olson decision, § 93-16-3, Miss. Code Ann. (Supp. 1989), was amended to provide, in pertinent part:
... whenever one (1) of the parents of a minor child dies, either parent of the child's parent ... who has died may, ... petition the chancery court in which the child resides, and seek visitation rights with such child.
Up to this point in the proceedings under her theory of law, Mrs. Muse would have been entitled to petition for visitation. However, § 93-16-7, Miss. Code Ann. (Supp. 1989), was also amended and serves to limit the application of the above statutes, as follows:
This chapter shall not apply to the granting of visitation rights to the natural grandparents of any child who has been adopted by order or decree of any court unless one (1) of the legal parents is also a natural parent of such child. This chapter shall apply to persons who become grandparents of a child by virtue of adoption.
Our recent decision of Howell v. Rogers, 551 So.2d 904 (Miss. 1989), did involve an application of the amended Grandparents Visitation Statutes. However, in that case, the natural mother and father had divorced and the custody of the child was awarded to the natural mother. The natural mother and step-father then adopted the child and subsequent to the adoption, the natural father died. We held that an adoption by a step-parent after the termination of parental rights does not terminate the visitation rights of the natural grandparents, the parents of one of the natural parents whose parental rights were terminated. Unfortunately for Mrs. Muse, in the current case, these amended statutes do not afford her the same right of action.
By its own terms the Grandparents Visitation Rights Act does not apply to Mrs. Muse in that when Mrs. Hutchins adopted the children she was not a parent of either of them and the adoption terminated the *1034 parental rights of her son, Michael Lee Hutchins.
Whatever rights to visitation Mrs. Muse may have acquired under the Grandparents Visitation Rights Act were terminated by the decree of adoption.
Our recent decision of In the Matter of the Adoption of a Minor Identified in the Petition Hill v. Smith, 558 So.2d 854 (Miss. 1990), an equally tragic situation led to the same result that must occur here. There a very young couple were married and were the parents of a child. They lived next door to the wife's parents when the young husband chased his young wife into her father's yard threatening her with a shotgun. Her father shot and killed the young husband.
Thereafter, the maternal grandparents adopted the child of their daughter and her deceased husband. The paternal grandparents, like Mrs. Muse here, were not made parties to the adoption petition or proceeding and apparently knew nothing about it until some time after it had taken place. There, the paternal grandparents sought to set aside the adoption and to obtain visitation rights. They were met by a motion for summary judgment which was granted by the chancery court and upheld by this Court.
We are constrained to follow the wording of the statute as it is written in the Grandparents Visitation Rights Act, the statutory scheme of adoption, and our own precedent. For this reason we find that the chancellor did not err in his application of the law but followed it faithfully and there is no merit to this assignment or this appeal.

II.

DID THE CHANCELLOR'S FAILING HEALTH CONTRIBUTE TO A MISAPPLICATION OF THE LAW?
Mrs. Muse asserts a sense of confusion and haste on the part of Chancellor Alexander, who died less than 48 hours after the final hearing. But upon a careful review of this record we find the assertion is not substantiated. Chancellor Alexander followed the law as it was written. His comments indicate that he was not precisely happy with what he found the law required him to do, but he did it. There is no merit to this assignment.

III.

DID THE TRIAL COURT ERR IN DENYING MRS. MUSE' MOTION TO CORRECT ITS FINAL JUDGMENT OR GRANT A NEW TRIAL?
Pursuant to Rule 59(a)(2) and Rule 60(b)(2), (4), (6) of the Mississippi Rules of Civil Procedure, Mrs. Muse filed a Motion to Correct Final Judgment or, in the Alternative, for a New Trial. In denying this motion, Chancellor Sugg said, "... the motion to modify is overruled for two reasons. It was not filed within ten days required by 52(b) and it has no merit."
The gist of this assignment is that M.R.C.P. 59 requires that a motion for new trial be made within 10 days of entry of the final judgment which is defined as delivery to the clerk for filing. No final judgment was entered because of Chancellor Alexander's death; therefore, Mrs. Muse contends that Chancellor Sugg erred in denying the motion on the basis that it was not timely filed within the ten day limit. This argument may have merit except that the chancellor also found a second ground for overruling the motion, which was that in his opinion it had no merit.
The grant or denial of such a motion has always been a matter left to the sound discretion of the trial judge. Absent an abuse of discretion on his part we are without power to disturb such a determination. Having closely reviewed the record before us, we conclude that the chancellor acted well within his discretion when he denied the request that the judgment be corrected and for a new trial. See Mayoza v. Mayoza, 526 So.2d 547, 550 (Miss. 1987).

IV.

A SUGGESTION.
We adopt the suggestions made by Hawkins, P.J., for the court in Hill.
*1035 While we do not suggest that the legislature may not wish to once again revisit this area, we trust they will do so only after careful study. They know, far better than we, hasty legislation drafted to correct a single evil may wreak a greater evil on a previously carefully structured statutory scheme, such as the Mississippi Adoption Laws.
We therefore suggest to the chancellors of this state that they take into consideration the scheme already erected by the legislature. In cases such as this and Hill, and perhaps any case of grandparental adoption, they should consider exercising their statutory authority under § 93-17-11, Miss. Code Ann. (1972), as Amended, to enter an interlocutory decree and have an investigation conducted to assure that their actions will be in the child's best interest. It is true that present adoption laws in Mississippi allow the chancellor under certain circumstances to waive the investigation in interlocutory decrees. However, simply exercising a power because one has the power is not always wise.
We are aware that the chancellors of our state take their duties quite seriously. This is particularly true where the welfare of children are involved, as in cases of custody, visitation and adoption. However, we feel that we would be remiss in our duty if we did not suggest to them that in an adoption proceeding immediately following on the heels of a tragedy, where the adoption itself would permanently terminate the child or children's contact with the grandparents of their deceased parent, prudence may well be the better part of valor. Time may cure the difficulties between the Smiths and the Hills and between Mrs. Hutchins and Mrs. Muse. However, once the adoption decree has been entered, the grandparent who has become the parent controls the relationship that the children will have with their other grandparent. The manner in which this power is utilized will not always be in the best interest of the child. We remind our chancellors that the best interest of the child is also a polestar consideration in the granting of any adoption. The legislature knew this and wrote it into the adoption statute.
We have faith and great confidence in the discretion of the chancellors of this state in cases such as these. An exercise of that discretion might go far to mitigate seemingly harsh results while allowing the legislature of this state time to act with reason and wisdom if they choose once again to address the issue of grandparental rights.
In the meantime, because the adoption was granted to Mrs. Hutchins, as under the law the chancellor had the authority to do, without an interlocutory appeal or any investigation; because that adoption was valid and because Mrs. Hutchins was not a natural parent of the children, the rights of Mrs. Muse to have custody or to visit with her grandchildren died with the adoption decree. The judgment below is therefore affirmed.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, ANDERSON, PITTMAN and BLASS, JJ., concur.