KING, P.J.,
for the Court:
¶ 1. Annie Harris filed a wrongful death claim against Robert Hughes for the wrongful death beneficiaries of Christopher Harris. Robert Hughes requested representation in this action from Allstate Insurance Company (Allstate) which provided his homeowner’s insurance policy. After investigating the facts, Allstate issued a reservation of rights letter, retained counsel to represent Hughes and intervened in the wrongful death action for the purpose of obtaining a declaratory judgment on the issue of coverage. The coverage issues were tried before a jury, which found that Hughes’ actions were not covered under the Allstate homeowner’s policy. Harris filed appropriate post-trial motions, which were denied. Aggrieved by this decision, Harris appeals and raises the following issues: (1) whether the verdict *685 for Allstate was against the overwhelming weight of the evidence; (2) whether the trial court erred by failing to grant the appellants’ motion for judgment notwithstanding the verdict, or in the alternative, a new trial; (3) whether the trial court erred by failing to grant instruction D-l which was the peremptory instruction finding coverage in favor of the heirs of Christopher Harris; and (4) whether the trial court erred by not allowing testimony or evidence that Robert Hughes was acquitted of murder charges arising from the death of Christopher Harris.
FACTS
¶2. Robert Hughes suspected that his wife, Mary Hughes, was having an affair with Christopher Harris. On the afternoon of March 19, 1997, Robert Hughes, a field officer for the Department of Corrections, spent the afternoon practicing his marksmanship at the police firing range with two .38 caliber revolvers. After completing the practice session, Hughes placed one of the revolvers underneath the seat of his car, placed the other one inside his waistband and went home. Hughes, who arrived at home prior to his wife, was there watching television, when Mrs. Hughes arrived at home later that evening.
¶ 3. Mrs. Hughes told him that she was going to visit an aunt and walked outside to her car. Hughes looked out of the window and noticed that his wife was putting on lipstick and brushing her hair. He then returned to the couch to watch television and pondered his wife’s unusual behavior. Hughes, who suspected that his wife was engaged in an affair with Christopher Harris, had installed a tape recorder in the garage to record her conversations. After pondering further his wife’s unusual behavior, Hughes checked the tape, and discovered that his wife had had a conversation with Harris earlier that day. During the conversation, Harris asked Mrs. Hughes to take him to pick up his car from the parking lot of a local hotel. Hughes decided to confront his wife and Harris at the hotel.
¶ 4. Hughes, with his young daughter in the car, arrived at the hotel and waited for his wife and Harris to arrive. After Mrs. Hughes pulled into the parking lot with Harris, Hughes got out of his car and walked to Mrs. Hughes’ car. He hit the passenger side window, opened the car door and shouted a warning at Harris about bothering him. Mrs. Hughes, fearing what her husband might do, ran from the parking lot toward the hotel.
¶ 5. At the trial, Hughes offered this version of the events in the hotel parking lot. When Harris came toward him, Hughes pulled his gun to scare Harris away. However, Harris kept coming toward him and twice swung his hand at the gun. The gun discharged, struck Harris in the chest and killed him. After the shooting, the police arrived and found Harris in the front passenger seat slumped over toward the console with his left foot inside the car and his right foot hanging outside of the car touching the ground. Hughes was later arrested on a charge of murder, but was acquitted after trial.
¶ 6. Harris’ heirs filed a wrongful death action against Hughes claiming negligence, intentional and negligent infliction of emotional distress and assault and battery. Allstate intervened in the action after Hughes demanded that he be provided a defense under his homeowner’s policy. In the petition to intervene, Allstate requested a declaratory judgment on coverage obligations to Hughes. Harris’ wrongful death heirs settled with Hughes and the matter proceeded to trial to determine coverage obligations. The jury returned a verdict for Allstate denying Hughes cover *686 age for the shooting. After filing the appropriate post-trial motions and being denied relief, the wrongful death heirs have appealed.
I.
Whether the verdict for Allstate was against the overwhelming weight of the evidence?
II.
Whether the trial court erred by failing to grant the appellants’ motion for judgment notwithstanding the verdict, or in the alternative, a new trial?
¶ 7. Mrs. Harris’ issues I and II are interwoven, and this Court will therefore address them jointly. In these issues, Mrs. Harris suggests that there was sufficient evidence of accidental injury to bring this action within the coverage of Hughes’ homeowner’s policy, and that she is therefore entitled to a new trial on this issue.
¶ 8. The grant or denial of a new trial is within the sound discretion of the trial judge. “This Court will reverse a trial judge’s denial of a request for a new trial only when such denial amounts to an abuse of that judge’s discretion.” Shields v. Easterling, 676 So.2d 293, 298 (Miss.1996) (quoting Bobby Kitchens, Inc. v. Mississippi Ins. Guar. Ass’n, 560 So.2d 129, 132 (Miss.1989) (stating that a new trial may be granted when, for instance, the 'verdict, is against the overwhelming weight of the evidence, when the jury has been confused by faulty instructions, or when the jury verdict is a result of passion, bias or prejudice)). Morgan v. State, 703 So.2d 832, 840 (Miss.1997); See also Esparaza v. State, 595 So.2d 418, 426 (Miss.1992). Absent an abuse of discretion, this Court is “without power to disturb such a determination.” Muse v. Hutchins, 559 So.2d 1031, 1034 (Miss.1990). Consistent with this standard, we find that the following evidence supports the jury’s verdict that Hughes’ actions were intentional and not covered under the homeowner’s policy: (1) Hughes testified that he went to the hotel and waited to confront his wife and Harris; (2) Hughes armed himself with two guns to go to the hotel; (3) Hughes hit on the car window, opened the door and threatened Harris; and (4) Hughes deliberately pointed a loaded gun at Harris.
¶ 9. In making a decision to grant or deny a motion for judgment notwithstanding the verdict, the trial court must consider the evidence in the light most favorable to the non-moving party, giving that party the benefit of all favorable inferences that may be reasonably drawn from the evidence, as well as contemplating any uncontradicted evidence presented by the moving party. Pickering v. Industria Masina I Traktora, 740 So.2d 836(¶ 23) (Miss.1999); American Fire Protection, Inc. v. Lewis, 653 So.2d 1387, 1390 (Miss.1995); Eselin-Bullock & Assocs. Ins. Agency v. National Gen. Ins. Co., 604 So.2d 236, 240 (Miss.1992). If the facts point so overwhelmingly in favor of the appellant that reasonable men could not have arrived at a contrary verdict, we are required to reverse and render. Steele v. Inn of Vicksburg, Inc., 697 So.2d 373, 376 (Miss.1997). If there is substantial evidence of such quality and weight that reasonable and fair minded jurors might have reached different conclusions, affirmance is required. Id. Applying this standard to the case at bar, we find that there is substantial evidence in the record to support the denial of the judgment notwithstanding the verdict and that the evidence is of such quality and weight that affir-mance of the verdict is required. Accordingly, we find that the verdict was not contrary to the weight of the evidence, and *687 no error was committed in denying Mrs. Harris a new trial.
III.
Whether the trial court erred by failing to grant instruction D-l which was the peremptory instruction finding coverage in favor of the heirs of Christopher Harris?
¶ 10. Mrs. Harris contends that the trial court erred by failing to grant jury instruction D-l as modified. The proposed jury instruction would have told the jury that “[t]he Court instructs the jury to return a verdict in favor of the defendants and against Allstate Insurance Company.” Mrs. Harris argues that she was entitled to a verdict against Allstate because Allstate presented no testimony, facts or evidence to prove that Hughes’ actions were intentional in causing the death of Mr. Harris. It is Mrs. Harris’ contention that Hughes’ actions amounted to negligence and that Mr. Harris’ behavior caused Hughes’ gun to discharge. Mrs. Harris argues that since there was no evidence suggesting that Hughes’ actions were intentional, then the jury should have been instructed to return a verdict establishing coverage under the insurance policy.
¶ 11. Although Mrs. Harris cites this as an issue in her brief, she fails to cite to any authority to support her position. This Court requires counsel to not only make a condensed statement of the case, but requires support of propositions of law with reasons and authorities. Johnson v. State, 154 Miss. 512, 122 So. 529, 529 (1929); Bridges v. State, 154 Miss. 489, 122 So. 533, 534 (1929). “This Court is not required to address any issue that is not supported by reasons and authority.” Hoops v. State, 681 So.2d 521, 535 (Miss.1996) (citing Pate v. State, 419 So.2d 1324, 1325-26 (Miss.1982)). See also Smith v. Dorsey, 599 So.2d 529, 532 (Miss.1992). As noted previously, there existed significant testimony, from which the jury could have found Hughes’ actions to be intentional. Accordingly, we find no merit in this issue.
IV.
Whether the trial court erred by not allowing testimony or evidence that Robert Hughes was acquitted of murder charges arising from the death of Christopher Harris?
¶ 12. Prior to trial, Allstate filed a motion in limine seeking to exclude any reference to Hughes’ criminal trial or acquittal on the murder charge. The court granted Allstate’s motion, but allowed several officers to testify about their investigation of the shooting that caused Harris’ death. It is Mrs. Harris’ contention that the officers’ testimony was prejudicial to the wrongful death heirs because it gave the impression that Hughes’ actions were intentional and criminal, and therefore, not covered under the homeowner’s policy.
¶ 13. This Court utilizes an abuse of discretion standard of review regarding the admission or exclusion of evidence. Thompson Mach. Commerce Corp. v. Wallace, 687 So.2d 149, 152 (Miss.1997). “Where error involves the admission or exclusion of evidence, this Court will not reverse unless the error adversely affects a substantial right of a party.” Floyd v. City of Crystal Springs, 749 So.2d 110(¶ 12) (Miss.1999) (quoting In re Estate of Mask, 703 So.2d 852, 859 (Miss.1997); Terrain Enters., Inc. v. Mockbee, 654 So.2d 1122, 1131 (Miss.1995)).
¶ 14. Applying this standard to the case at bar, we find that the trial court did not abuse its discretion in admitting the officers’ testimony about the shooting. The officers’ testimony merely explained what occurred and allowed the jury to draw its own conclusion as to whether or not the *688 shooting was accidental. Therefore, we cannot hold that the trial court erred by admitting the officers’ testimony.
¶ 15. THE JUDGMENT OF THE LAMAR COUNTY CIRCUIT COURT IN FAVOR OF APPELLEE IS AFFIRMED. APPELLANT IS TAXED WITH ALL COSTS OF THIS APPEAL.
McMILLIN, C.J., SOUTHWICK, P.J., PAYNE, BRIDGES, THOMAS, MYERS and CHANDLER, JJ., concur.
LEE, J., concurs in result only.
IRVING, J., not participating.