# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2023-IA-00457-SCT

*IN RE THE ADOPTION OF J.J.W.B.: J.B., SR.,*
*AND P.B.*

*v.*

*M.M.*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/30/2023 |
| TRIAL JUDGE: | HON. DAVID SHOEMAKE |
| TRIAL COURT ATTORNEYS: | MICHAEL CHAD MOORE |
| | L. WESLEY BROADHEAD |
| COURT FROM WHICH APPEALED: | SMITH COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | MICHAEL CHAD MOORE |
| ATTORNEY FOR APPELLEE: | L. WESLEY BROADHEAD |
| NATURE OF THE CASE: | CIVIL - CUSTODY |
| DISPOSITION: | REVERSED AND RENDERED- 11/21/2024 |
| MOTION FOR REHEARING FILED: | |

## CONSOLIDATED WITH

## NO. 2023-IA-00458-SCT

*J.B., SR., AND P.B.*

*v.*

*M.M.*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/30/2023 |
| TRIAL JUDGE: | HON. DAVID SHOEMAKE |
| COURT FROM WHICH APPEALED: | SMITH COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANTS: | MICHAEL CHAD MOORE |
| ATTORNEY FOR APPELLEE: | L. WESLEY BROADHEAD |
| NATURE OF THE CASE: | CIVIL: CUSTODY |
| DISPOSITION: | AFFIRMED AND REMANDED - 11/21/2024 |
| MOTION FOR REHEARING FILED: | |

**EN BANC.**

**BEAM, JUSTICE, FOR THE COURT:**

¶1.     This consolidated interlocutory appeal arises out of two cases originating in the Chancery Court of Smith County.  The first case involves the adoption of the minor child, J.J.W.B., by his maternal grandfather, J.B., Sr., and his step-grandmother, P.B.  The second case involves post-adoption visitation rights of M.M., the maternal grandmother of J.J.W.B.

### FACTS AND PROCEDURAL HISTORY

¶2.     M.M. and J.B., Sr., were once married and had a daughter L.B.  After M.M and J.B., Sr., divorced, J.B., Sr., married P.B.  L.B. gave birth to J.J.W.B. in May 2018. The child was later removed from L.B's custody due to her drug addiction.

¶3.     In August 2018, L.B.'s brother sought custody of J.J.W.B. against the natural parents, K.B. and L.B.  L.B. and her brother agreed to temporary custody placed with J.B., Sr., and P.B.  In September 2018, M.M. sought visitation of the child.

¶4.     In October 2018, at a review hearing, the court continued custody with J.B., Sr., and P.B. and granted visitation rights to M.M., setting the matter for review in January 2019. At this time, J.J.W.B. was returned to L.B., and visitation rights remained with M.M.

¶5.     In July 2019, J.J.W.B. was placed back in the custody of J.B., Sr., and P.B. with continued visitation for M.M., and the matter was set for review in July 2020. In July 2020, the court continued custody with J.B., Sr., and P.B. and visitation for M.M.

¶6.     In October 2020, J.B., Sr., and P.B. filed their petition for voluntary termination of parental rights and for adoption of J.J.W.B.  The petition contained both natural parents'

consent to the adoption and their termination of parental rights. M.M. was not noticed of the termination-of-parental-rights and adoption petition.

¶7. In December 2020, the court entered its order terminating parental rights and granting adoption of J.J.W.B. to J.B., Sr., and P.B. One month later, M.M. filed a petition for citation of contempt against J.B., Sr., and P.B. for not allowing M.M. to exercise visitation with the child. The October 2019 order, prior to the adoption, granted her visitation rights to the child. J.B., Sr., and P.B. responded with a motion to dismiss, arguing that any prior existing visitation orders were extinguished by the adoption.

¶8. In February 2022, M.M. then filed a motion to set aside the adoption. Again, J.B., Sr., and P.B. responded with a motion to dismiss in April 2022, arguing that she was a year late. In March 2023, the court issued a letter to the parties notifying counsel that the motions to dismiss in both cases were denied. The court reasoned that M.M. should have been noticed concerning the termination of parental rights and adoption. The court found that M.M.'s visitation rights were not terminated by the adoption order.

¶9. It is from the denial of these motions to dismiss that J.B., Sr., and P.B. sought permission of this Court to file an interlocutory appeal, which this Court granted by separate order on June 7, 2023. Cause Number 2023-IA-00457-SCT is the interlocutory appeal of the denial of the motion to dismiss M.M.'s motion to set aside the adoption. Cause Number 2023-IA-00458-SCT is the interlocutory appeal of the denial of the motion to dismiss M.M.'s contempt action. The Court sua sponte consolidated the granted interlocutory appeals by order on June 22, 2023.

3

**DISCUSSION**

¶10.   "[A] motion to dismiss under Rule 12(b)(6) of the Mississippi Rules of Civil Procedure raises an issue of law, which is reviewed under a *de novo* standard." **Moses v. Rankin Cnty.**, 285 So. 3d 620, 623 (Miss. 2019) (internal quotation marks omitted) (quoting **Rose v. Tullos**, 994 So. 2d 734, 737 (Miss. 2008)). Two questions are before this Court: (1) whether M.M.'s motion to set aside the adoption was proper, and (2) whether the adoption extinguished M.M.'s prior visitation order.

## I.     Whether M.M.'s motion to set aside the adoption was proper.

¶11.   M.M. contends that the adoption is jurisdictionally defective and should be set aside because she should have been provided notice of the termination of parental rights and adoption proceeding. J.B., Sr., and P.B. filed a motion to dismiss contending, first, that M.M.'s motion to set aside the adoption is barred by the statute of limitations and, second, that M.M., as a grandparent, is not a necessary party required to be given notice of the proceeding.

¶12.   Mississippi Code Section 93-17-15 provides that "No action shall be brought to set aside any final decree of adoption, whether granted upon consent or personal process or on process by publication, except within six (6) months of the entry thereof." Miss. Code Ann. § 93-17-15 (Rev. 2021).  On February 11, 2022, M.M. filed her motion to set aside the adoption.  The adoption order had been entered more than a year before on December 9, 2020.  There is no question that M.M. did not file her motion within six months of finding out about the adoption.  She acknowledged in her motion that she knew about the adoption

4

shortly before she filed a petition for contempt regarding the visitation on January 29, 2021. That leaves M.M. to show that the adoption was jurisdictionally defective.

¶13. Mississippi Code Section 93-17-17 provides "that no adoption proceedings shall be permitted to be set aside except for jurisdictional defects and for failure to file and prosecute the same under the provisions of this chapter." Miss. Code Ann. § 93-17-17 (Rev. 2021). M.M. claims that as a grandparent she is a necessary party to the adoption and termination-of-parental-rights proceeding. She contends that because she was granted visitation and had a viable relationship with J.J.W.B that she should have been noticed of the proceedings. She believes that J.B., Sr., and P.B. secretly attempted to have parental rights terminated and an adoption order entered to circumvent M.M.'s court-ordered visitation.

¶14. Mississippi Code Section 93-17-5(1) provides who shall receive notice, and that includes the parents of the child being adopted, two adult kin if the natural parents are deceased, a guardian ad litem, the person having physical custody of the child, or "[a]ny person to whom custody of the child may have been awarded[.]" Miss. Code Ann. § 93-17-5(1) (Supp. 2024). M.M. argues she falls in the category of "any person to whom custody could have been awarded" because she had been granted visitation.

¶15. In *S.R. v. P.L.H. (In re Adoption of D.T.H.)*, maternal grandparents appealed an adoption order because they were not included as necessary parties to the adoption proceedings. *S.R. v. P.L.H. (In re Adoption of D.T.H.)*, 748 So. 2d 853, 857 (Miss. Ct. App. 1999). They argued "that they should have been joined as parties in the adoption proceedings because they possessed court ordered visitation rights, and the adoption could deprive them

5

of their liberty interest without due process." *Id.* The Court of Appeals reversed the adoption order because had the maternal grandparents been awarded physical custody in the pending hearing, they would have been necessary parties to the adoption proceeding. *Id.*

¶16.   Here, that was not the case. This case is more similar to *C.L.M., Jr. v. D.J.G. (In re Adoption of J.J.G.)*, 736 So. 2d 1037 (Miss. 1999). There, the maternal grandparents challenged for lack of notice the adoption of a minor child by the paternal grandmother. *Id.* The maternal grandparents argued this was merely an attempt to defeat their petition for grandparent visitation. *Id.* The chancery court ruled in favor of the paternal grandmother, and the maternal grandparents appealed. *Id.* This Court affirmed, holding that the maternal grandparents did not have standing to object to an adoption to which the child's parents had consented. *Id.* at 1040.

> In the case sub judice, both of the natural parents are adults, and both consented to the adoption of the minor child. The law presumes natural parents will love their children most and will act in accordance with their children's best interests. *See* Miss. Code Ann. § 93-13-1 (1994) (it is in the best interest of children that they be placed in the custody of their natural parents absent some clear showing to the contrary). Accordingly, the law governing adoption proceedings places natural parents in a position superior to other third parties, even blood relatives. *See* Miss. Code Ann. § 93-17-7 (1994) (only parents have a statutory right to object to the adoption of a minor child). *See also* Miss. Code Ann. § 93-17-5 (1994) (natural parents are necessary parties to an adoption proceeding but natural grandparents or other relatives are not). In the case sub judice, the natural parents agreed the best interests of their child would be served by placing their child in the custody of his or her paternal grandmother.

> Finding no statutory authority granting [the maternal grandparents] standing to object to the adoption of the minor child, we affirm the judgment of the lower court.

*Id.*

6

¶17.    According to Mississippi Code Section 93-17-5, the only parties required to receive notice in this case were the natural parents, who had filed their voluntary consents for termination of parental rights, and J.B, Sr., and P.B., who had physical custody of the minor child.   MM.'s motion to set aside the adoption was untimely, and, further, no jurisdictional issues were present to set aside the adoption.  M.M., as the grandmother with visitation rights, was not a necessary party to the adoption proceedings.  The chancellor erroneously denied the motion to dismiss because M.M.'s motion to set aside the adoption was improper. As such, we reverse the denial of the motion to dismiss. As to Cause Number 2023-IA-00457-SCT, we render judgment finally dismissing M.M.'s motion to set aside the adoption.

**II.    Whether an adoption order extinguishes a prior visitation order.**

¶18.    J.B., Sr., and P.B. contend that M.M.'s visitation order, which preceded their adoption of J.J.W.B., is extinguished by the adoption order.  M.M. contends that her visitation rights are a settled issue. Neither the Mississippi legislature nor the courts have specifically addressed the issue of whether an adoption order extinguishes a previous visitation order, but this Court has answered whether adoption extinguishes grandparents' rights to visitation.

¶19.    This Court first answered the question of whether a subsequent adoption of a child by a stepfather terminated the rights of a grandparent who had previously petitioned the court for visitation rights in ***Olson v. Flinn***, 484 So. 2d 1015, 1016 (Miss. 1986).  There, the chancery court held that under Mississippi Code Section 93-16-7 (Supp. 1985), the grandparent had no rights to visitation after the child was adopted and dismissed the case. On appeal, this Court held that "Legislation has established legal rights of visitation to

7

grandparents so long as the child remains unadopted; however, the adoption of a child terminates the natural grandparents' legal rights to visitation, except as to grandparents of the natural parent who is the spouse of the adopting parent." *Olson*, 484 So. 2d at 1017.

¶20.    In *Howell v. Rogers*, however, this Court held that the Legislature had amended grandparent-visitation rights as a response to the harshness of *Olson*. *Howell v. Rogers*, 551 So. 2d 904, 905 (Miss. 1989). There, the grandparents appealed from a chancery court order dismissing their petition for grandparent-visitation-rights. *Id.* The natural parents of the child were divorced, and custody was awarded to the mother. *Id.* at 905. The natural mother and stepfather adopted the child after the natural father had passed away. *Id.* The paternal grandparents then sought visitation rights. *Id.*

¶21.    The chancery court, relying on *Olson*, held that under the grandparent-visitation-rights statutes, the grandparents had no standing to seek visitation with the child: "The [c]ourt reasoned that *Olson* required dismissal in that grandparent visitation could not be ordered in such case, but rather such visitation should be voluntary." *Id*.

¶22.    The *Howell* Court looked to the amended statutes and held that "adoption by a step-parent after the termination of parental rights of one of [the] natural parents does not terminate the visitation rights of the natural grandparents, parents of such parent whose rights have been terminated." *Id.* at 906.

¶23.    Mississippi Code Section 93-16-3 now provides:

> Whenever a court of this state enters a decree or order awarding custody of a minor child to one (1) of the parents of the child, or terminating the parental rights of one (1) of the parents of the minor child, or whenever one (1) of the parents of a minor child dies, either parent of the child's parent who was

not awarded custody, or whose parental rights have been terminated or who has died, may petition the court in which the decree or order was rendered or, in the case of the death of a parent, petition the chancery court in the county in which the child resides, and seek visitation rights of such child.

Miss. Code Ann. § 93-16-3(1) (Rev. 2021).

¶24. Further, Mississippi Code Section 93-16-7 provides:

This chapter shall not apply to the granting of visitation rights to the natural grandparents of any child who has been adopted by order or decree of any court unless: (a) one (1) of the legal parents of such child is also a natural parent of such child; or (b) one (1) of the legal parents of such child was related to the child by blood or marriage prior to the adoption. This chapter shall apply to persons who become grandparents of a child by virtue of adoption.

Miss. Code Ann. § 93-16-7 (Rev. 2021).

¶25. We find persuasive Professor Deborah H. Bell's treatise, which says: "When a child is adopted, natural grandparents lose visitation rights unless one of the legal parents after adoption is a natural parent or was related to the child by blood or marriage prior to the adoption." Deborah H. Bell, *Bell on Mississippi Family Law* 12.09[7][a] (3d ed. 2019) (citing Miss. Code Ann. § 93-16-7 (2004)). Given the legislative intent that adoption by a related family member not terminate a grandparents' rights to visitation, it follows that M.M.'s rights to visitation were not automatically extinguished given the legal parents' relation to J.J.W.B. by blood and marriage.

¶26. As such, the adoption of J.J.W.B. by J.B., Sr., and P.B. does not extinguish the visitation rights of M.M., who is the other natural grandparent of the parents whose rights have been terminated. The chancellor correctly denied the motion to dismiss M.M.'s contempt action. We affirm the case as to Cause Number 2023-IA-00458-SCT, and we

9

remand the case to the chancery court for proceedings to determine visitation post-adoption.

## CONCLUSION

¶27.    We affirm the denial of the motion to dismiss M.M.'s contempt action concerning her visitation rights with J.J.W.B. (Cause Number 2023-IA-00458-SCT), and we remand the case to the chancery court for further proceedings consistent with this opinion. We reverse and render the denial of the motion to dismiss M.M.'s motion to set aside the adoption of J.J.W.B. (Cause Number 2023-IA-00457-SCT).

¶28.    **AS TO NO. 2023-IA-00457-SCT: REVERSED AND RENDERED. AS TO NO. 2023-IA-00458-SCT: AFFIRMED AND REMANDED.**

**MAXWELL, CHAMBERLIN, ISHEE AND GRIFFIS, JJ., CONCUR. COLEMAN, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. KING, P.J., CONCURS IN PART AND IN THE RESULT WITH SEPARATE WRITTEN OPINION JOINED BY RANDOLPH, C.J., AND KITCHENS, P.J.; COLEMAN AND GRIFFIS, JJ., JOIN IN PART.**

**KING, PRESIDING JUSTICE, CONCURRING IN PART AND IN RESULT:**

¶29.    I write separately to express my concern regarding the majority's finding that the only parties required to receive notice in this case were the child's natural parents and the child's maternal grandfather and step-grandmother. I respectfully disagree and would find, under the facts of this case, that J.J.W.B.'s maternal grandmother, M.M., also was entitled to notice of the adoption proceedings.

¶30.    L.B. gave birth to J.J.W.B. on May 21, 2018.[1] On August 29, 2018, J.B., Jr., L.B.'s brother, petitioned for custody of J.J.W.B. and asserted that L.B. "has had a long history o[f] mental illness and drug abuse." The petition stated:

---

[1] The record reflects that J.J.W.B.'s father, J.K.B., was not involved in J.J.W.B.'s life.

That the mother is currently in a state of complete habitual drug use and is doing so in such a way that the minor child is in danger. That she is neglecting the minor child, is taking the minor child with her from drug house to drug house and leaving the child in filthy and uninhabitable conditions. She has lost the ability to control her actions due to her drug use.

J.B., Jr., additionally asserted that J.J.W.B.

was given to him with the help of the Scott County Sheriff's Office who located the mother and the minor child where it turned out that she had spent the entire night at a drug house and had never made arrangements to see for the welfare of the child and she actually left the child at the home of strangers.

¶31. On August 30, 2018, the trial court found that "there is immediate and irreparable harm to the minor child . . . who is three months old due to the drug use of the mother who has been the only custodial parent of the child since the child was born." The trial court further found, and L.B. and J.B., Jr., agreed, that temporary custody of J.J.W.B. should be granted to their father, J.B., Sr., and his wife, P.B., on an emergency basis.

¶32. On September 12, 2018, M.M., L.B.'s mother, and J.B., Jr., filed a motion for visitation and asserted that P.B. had refused to allow J.B., Jr., and M.M. to have any visitation with J.J.W.B. even though M.M. "had seen the child for most every day of the child's life since the child was born . . . ." J.B., Jr., and M.M. requested that the trial court grant visitation during the time the temporary order was in effect.

¶33. On October 2, 2018, L.B. failed a drug test. The trial court ordered L.B. to "immediately check herself into a long term rehabilitation clinic, at least a 90 day program." The trial court stated:

That the court finds the previous temporary order of the Court placing custody of the minor child, [J.J.W.B.], born May 21, 2018 with the Maternal Grandfather and his wife, [J.B., Sr.,] and [P.B.] will continue and visitation by

11

the mother . . . will be restricted and supervised until such time as she has completed a long term treatment regime at a rehabilitation facility. That [L.B.] will not be allowed to reside in the home of the custodians, but will have supervised visitations.

Additionally, the trial court granted M.M. visitation every other weekend plus "during the time that [M.M.] is not working, she will be allowed to have overnight visitation with the minor child during the middle of the week, upon her contacting [J.B., Sr., and P.B.]." The trial court also granted M.M. extra visitation during the Thanksgiving and Christmas holidays.

¶34. On January 31, 2019, the trial court entered an order finding that it was "satisfied that L.B. has complied with the orders of the Court regarding treatment for the use of illegal drugs and that she has completed a 90 day in patient treatment. The parties agree that temporary custody of the minor [J.J.W.B.] . . . is hereby restored to [L.B.]." The trial court also found that M.M.:

is entitled to and will continue to exercise visitation with the minor child, beginning February 9, every other weekend from 12:00 noon on Saturday until 2:00 Sunday afternoon. Also, during the weeks, as the parties agree, [M.M.] will be allowed to exercise overnight visitation at least twice during the month.

Lastly, the trial court ordered L.B. to submit to a drug test every two weeks until further order of the court.

¶35. On October 9, 2019, the trial court found that L.B. had relapsed into drug abuse. The trial court entered an order granting custody of J.J.W.B. to J.B., Sr., and P.B. and granted "un-restricted visitation" to M.M. The trial court found that if the parties could not agree on a visitation schedule, "the parties agree that at a minimum, [M.M.] will be entitled to

12

visitation every other weekend from Saturday Morning at 9:00 a.m. to Sunday afternoon at 6:00 p.m., as well as one night during the week." Further the trial court granted M.M. visitation on holidays, Thanksgiving, and Christmas, in addition to one week during summers.

¶36. On July 8, 2020, the trial court entered an order to continue the previous orders of the trial court until further notice.

¶37. On October 22, 2020, J.B., Sr., and P.B., without notice to M.M., filed a Petition for Voluntary Termination of Parental Rights and for Adoption. The petition stated that L.B. and J.K.B. consented to the adoption of J.J.W.B. by J.B., Sr., and P.B. L.B. and J.K.B. also filed consents to the adoption and the termination of parental rights.

¶38. The trial court, on December 9, 2020, entered an order terminating the parental rights of L.B. and J.K.B. and granting adoption of J.J.W.B. to J.B., Sr., and P.B.

¶39. On January 29, 2021, M.M. filed a Petition for Citation for Contempt and Other Relief. M.M. asserted that after J.B., Sr., and P.B. had adopted J.J.W.B., they had unilaterally withheld visitation, and M.M. requested, inter alia, that the trial court order J.B., Sr., and P.B. to allow M.M. visitation with J.J.W.B.

¶40. M.M. filed a Motion to Set Aside Adoption on February 17, 2022. M.M. attached a portion of L.B.'s December 3, 2021, deposition. There, she was asked if M.M. had knowledge of the petition for voluntary termination of parental rights, and L.B. responded: "She knew nothing about it. Me and her had no communication at the time because [J.B., Sr.,] and [P.B.], 'You haven't talked to [M.M.]. Don't talk to [M.M.].' They didn't want her

13

to know anything about it."

¶41.     Under Mississippi Code Section 93-17-5:

> (1) There shall be made parties to the proceeding by process or by the filing therein of a consent to the adoption proposed in the petition, which consent shall be duly sworn to or acknowledged and executed only by the following persons, but not before seventy-two (72) hours after the birth of the child:
>
> . . . .
>
> (ii) Any person to whom custody of the child may have been awarded by a court of competent jurisdiction of the State of Mississippi.

Miss. Code Ann. § 93-17-5(1)(c)(ii) (Supp. 2024). This Court has emphasized that "[t]he best interest of the child is a polestar consideration in the granting of any adoption." *C.L.M. v. D.J.G. (In re Adoption of J.J.G.)*, 736 So. 2d 1037, 1038 (Miss. 1999) (citing *Muse v. Hutchins*, 559 So. 2d 1031, 1035 (Miss. 1990)).

¶42.     The majority finds that J.J.W.B.'s natural parents and J.B., Sr., and P.B., who had physical custody of the minor child, were the only parties entitled to notice on the adoption. The majority relies on this Court's prior holding that grandparents do not have standing to object to the adoption of a minor child and its reasoning that "[t]he law presumes natural parents will love their children most and will act in accordance with their children's best interests." *Id.* at 1040 (citing Miss. Code Ann. § 93-13-1 (1994)). This Court further cited Mississippi Code Section 93-13-1, stating that "it is in the best interest of children that they be placed in the custody of their natural parents absent some clear showing to the contrary." *Id.* (citing Miss. Code Ann. § 93-13-1 (1994)). This Court has explained that premise,

14

stating:

> [H]uman experience has demonstrated that as a general rule parental love and solicitude for the child's welfare are the best guarantee that it will be properly cared for . . . . The presumption in all cases is that the child's parents will love it most and care for it better than anyone else and it is in the best interest of the child to leave it in the custody of a parent.

*Wilson v. Davis*, 181 So. 3d 991, 996 (Miss. 2016) (alterations in original) (quoting *Moody v. Moody*, 211 So. 2d 842 (Miss. 1968)). However, the natural parent presumption can be rebutted by clear and convincing evidence that "the parent is unfit, mentally or otherwise, to have custody." *Id.* (internal quotation marks omitted) (quoting *Davis v. Vaughn*, 126 So. 3d 33, 37 (Miss. 2013)). Here, the record is clear that J.J.W.B.'s natural mother struggled with addiction, made decisions that endangered J.J.W.B., and, as a result, was unfit. J.J.W.B.'s natural father was voluntarily absent from his life. Conversely, M.M. retained substantial visitation rights with J.J.W.B., both while J.B., Sr., and P.B. had custody of J.J.W.B. and while L.B. regained custody of J.J.W.B. Moreover, evidence in the record indicated that J.B., Sr., and P.B. intentionally had asked L.B., who was in the throes of addiction, to conceal J.J.W.B.'s adoption from M.M.

¶43. The chancellor stated that he was "convinced that [M.M.] should have been noticed concerning the termination of parental rights and the adoption proceedings." I agree. Again, "[t]he best interest of the child is a polestar consideration in the granting of any adoption." *In re Adoption of J.J.G.*, 736 So. 2d at 1038 (citing *Muse*, 559 So. 2d at 1035). Accordingly, I would find that, under the facts of this case, M.M. was encompassed by Section 93-17-5(1)(c)(ii) and its language that "[a]ny person to whom custody of the child may have been

15

awarded by a court of competent jurisdiction in the State of Mississippi" shall be made parties to the proceeding by process or consent. Therefore, M.M. was entitled to notice of the adoption proceedings.

¶44. Even so, I agree with the majority's conclusion that M.M.'s motion to set aside the adoption was untimely. M.M. acknowledged in her motion to set aside adoption that she knew about the adoption shortly before she filed her petition for contempt on January 29, 2021. Yet M.M. waited until February 11, 2022, more than a year, to file her motion to set aside the adoption. As this Court recently reiterated, "[s]etting aside adoption decrees is disfavored even before six months has expired." *B.N. v. K.P. (In re Adoption of D.A.S.*), 391 So. 3d 1181, 1188 (Miss. 2024) (alteration in original) (internal quotation marks omitted) (citing *F.D.P. v. J.S.B. (In re Adoption of J.E.B.)*, 822 So. 2d 949, 951 (Miss. 2002)). This Court reasoned that "[t]he very nature of an adoption is to create a legally binding and unbreakable bond between the adoptive parents and the adopted child . . . . The adoption terminate[s] all parental rights . . . . To find otherwise creates impermanence and insecurity in the scheme of adoption." *Id.* at 1188 (second, third, and fourth alterations in original) (internal quotation marks omitted) (quoting *In re Adoption of J.E.B.*, 822 So. 2d at 953).

¶45. Although M.M. did not receive notice of the adoption, she admittedly waited more than a year to challenge the adoption. Thus, I agree with the majority's conclusion that M.M.'s motion to set aside the adoption is barred by the statute of limitations.

**RANDOLPH, C.J., AND KITCHENS, P.J., JOIN THIS OPINION. COLEMAN AND GRIFFIS, JJ., JOIN THIS OPINION IN PART.**

16